IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| GLENDA BAUTISTA,  §<br>       Plaintiff,  §<br>  §<br>v.  §    CIVIL ACTION NO. H-11-4162<br>  §<br>QUEST DIAGNOSTICS CLINICAL  §<br>LABORATORIES, INC., *et al.*,  §<br>       Defendants.  § | |

## MEMORANDUM AND ORDER

This employment case is before the Court on the Motion for Summary Judgment [Doc. # 17] filed by Defendants Quest Diagnostics Clinical Laboratories, Inc. and Quest Diagnostics Inc. (collectively, "Quest"), to which Plaintiff Glenda Bautista filed a Response [Doc. # 27], and Quest filed a Reply [Doc. # 29]. The Court has reviewed the full record in this case. Based on this review and the application of relevant legal authorities, the Court **denies** Defendant's Motion for Summary Judgment.

### I.  BACKGROUND

The majority of the relevant facts in this case are in dispute. The statements in this Background section are based on the parties' conflicting evidence and are not intended in any way to indicate a finding as to any disputed fact.

Quest provides diagnostic testing services for various entities, including healthcare providers and employers. Plaintiff was hired in April 2008 as the Supervisor of Immunology, Serology, and Molecular Medicine ("Immunology Supervisor"). She was 66 years old at the time she was hired. As Immunology Supervisor, Plaintiff was directly responsible for the supervision of lab technicians and assistants who were testing blood samples for immunological and infectious diseases.

In February 2009, Lab Manager Concepcion "Bobbie" Abadilla, Plaintiff's supervisor, conducted Bautista's annual performance review. Abadilla's overall performance rating of Plaintiff was "Achieves Expectations." Abadilla noted that Plaintiff needed to improve her leadership skills.

On October 7, 2009, Lead Technician ("Lead Tech") Lea Vivar reported to Plaintiff that Veronica Wade, one of the lab technicians under Plaintiff's supervision, had made a serious error while conducting tests on the Integra machine. Specifically, rather than conduct a new quality control run for each batch of one hundred tests, Wade reused the initial control values by pressing the "re-transmit" button on the machine. Wade is African-American.

On October 8, 2009, Plaintiff discussed the error with Wade at the beginning of Wade's shift. Plaintiff worked the day shift at Quest, while Wade worked a shift

that began at midnight.  On October 13, 2009, Plaintiff learned that Wade had again used the "re-transmit" button on October 10, 2009, to reuse initial control values rather than run new quality controls.  The next day, Plaintiff requested a meeting with Abadilla, Lab Director Olinda Jehovics, and HR Generalist Andrea Nicolas to discuss Wade's errors on the Integra machine.  At the conclusion of the meeting, Plaintiff was directed to retrain Wade on the Integra machine and to issue Wade a "Documented Discussion," the second level of discipline in Quest's progressive discipline procedure.

As part of her retraining, Wade was required to recite the standard operating procedure ("SOP") for the machine she was using each day.  As will be discussed in more detail below, there is a fact dispute regarding who proposed the recitation requirement.  Wade recited the SOPs to Plaintiff for a number of days, after which she was instructed to recite the SOPs to a Senior Tech co-worker.  Wade complained that she felt humiliated having to recite the SOPs to a co-worker, and Plaintiff has presented evidence that she immediately began working with Wade to find a more acceptable procedure.  Plaintiff discussed the situation with Andrea Nicholas in HR, who agreed with Plaintiff that the recitation procedure could be discontinued.

Additionally, Abadilla instructed Plaintiff to remove Wade from the Integra machine and assign her to work on the ECI machine.  Plaintiff later learned that Wade,

although assigned to work on the ECI machine, had traded machines with a co-worker and continued to work on the Integra machine.

At a meeting with Wade on October 27, 2009, Wade complained that Plaintiff had engaged in harassment by requiring her to recite the SOPs. Wade presented a written statement and advised that she had contacted an attorney. Wade claimed also that Lead Tech Lea Vivar had instructed her to re-transmit in order to run as many tests as possible during her shift. Vivar denied having told Wade to re-transmit and, indeed, it was Vivar who identified and reported the errors caused by the re-transmission.

Quest conducted an investigation of Wade's allegations and, on November 10, 2009, terminated Plaintiff's employment. Plaintiff was 68 years old at that time. On March 1, 2010, German Vargas, age 50, was hired to replace Plaintiff as the Supervisor of Immunology, Serology, and Molecular Medicine at Quest.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 4, 2010. On August 31, 2011, the EEOC issued a Notice of Right to Sue. Plaintiff filed this lawsuit on December 1, 2011, asserting that her discharge was a violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*. After an adequate time to

complete discovery, Quest filed its Motion for Summary Judgment. The Motion has been fully briefed and is now ripe for decision.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the burden of demonstrating that there is no evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Nat'l Union Fire Ins. Co. v. Puget Plastics Corp.*, 532 F.3d 398, 401 (5th Cir. 2008).

If the moving party meets this initial burden, the burden shifts to the nonmovant to set forth specific facts showing the existence of a genuine issue for trial. *See Hines v. Henson*, 293 F. App'x 261, 262 (5th Cir. 2008) (citing *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 278 (5th Cir. 2004)). The Court construes all facts and considers all evidence in the light most favorable to the nonmoving party. *Nat'l Union*, 532 F.3d at 401.

## III.    ANALYSIS

The ADEA prohibits an employer from discharging or otherwise discriminating against an employee because of the employee's age. *See Miller v. Raytheon Co.*, 716

F.3d 138, 144 (5th Cir. 2013) (citing *McClaren v. Morrison Mgmt. Specialists, Inc.*, 420 F.3d 457, 461 (5th Cir. 2005)). A plaintiff must prove by a preponderance of the evidence that "but for" her age, the employer would not have made the challenged decision. See *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 177–78 (2009).

### A. *Prima Facie* Case of Age Discrimination

In cases in which the plaintiff relies on circumstantial evidence, the Court applies the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The plaintiff is first required to establish a *prima facie* case of age discrimination in connection with the termination of her employment by showing that (1) she was over the age of forty; (2) she was qualified for her position; (3) she was discharged; and (4) she was "either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of [her] age." *Katseanes v. Time Warner Cable, Inc.*, 511 F. App'x 340, 344 (5th Cir. Feb. 6, 2013) (quoting *Jackson v. Cal–Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010)).

Plaintiff has satisfied her burden to establish a *prima facie* case of age discrimination. It is undisputed that Plaintiff was over the age of forty, that she was discharged, and that she was replaced by someone significantly younger. Plaintiff

also has presented evidence that she was qualified for her position, having performed the job for approximately eighteen months and received a favorable evaluation.[1]

## B. Defendant's Articulated Reason for Discharge

Where, as here, the plaintiff satisfies her burden to establish a *prima facie* case, the defendant must articulate a non-discriminatory reason for its decision. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142-43 (2000). Quest states that Plaintiff discriminated against Wade on the basis of her race. Additionally, Quest identifies a number of acts of alleged misconduct by Plaintiff in connection with the Wade situation:

- failing to review fully all control levels from Wade's October 7 shift;

- failing to investigate control values from previous dates;

- failing to follow Abadilla's instruction and ensure that Wade was removed from the Integra machine;

- failing to retrain Wade on the Integra machine;

- implementing an inappropriate discipline of Wade by requiring Wade to recite the SOPs for the ECI machine to a peer and to Bautista's voicemail for a period of 2 weeks;

---

[1] Indeed, a plaintiff challenging the termination of his employment "can ordinarily establish a *prima facie* case of age discrimination by showing that he continued to possess the necessary qualifications for his job at the time of the adverse action." *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1506 (5th Cir. 1988). This is construed to mean that the "plaintiff had not suffered physical disability or loss of a necessary professional license or some other occurrence that rendered him unfit for the position for which he was hired." *Id.* at 1506 n.3.

- misrepresenting to management in the initial October 14 meeting that she had coached Wade on October 8 not to "re-transmit' when she had actually just instructed Wade to follow the SOPs;

- coaching Wade on October 8 via telephone instead of in person;

- failing to ensure that Wade was completely trained on the Integra machine;

- failing to cross-train Wade despite Wade's request;

- failing to process Wade's request to change to full-time status, despite department overtime; and

- being unable and/or refusing to recognize and acknowledge any wrong doing.

*See* Motion for Summary Judgment, p. 16.

### C. Plaintiff's Evidence of Pretext

Because Quest has articulated non-discriminatory reasons for its decision to terminate Plaintiff's employment, the burden shifts back to her to show the pretextual nature of the Quest's proffered reason. Pretext may be established "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

#### 1. Race Discrimination

In this case, Plaintiff has presented strong evidence that raises a genuine issue of material fact regarding whether Quest's assertion that she discriminated against

Wade on the basis of Wade's race is false. Judie Hoffman, Quest's Director of Human Resources, testified in deposition that she did not believe that Plaintiff was a racist and that she thinks Plaintiff treated Wade differently, but not that she believes Plaintiff treated Wade differently because Wade is African-American. *See* Hoffman Depo., Exh. 2 to Response, pp. 9-10.

### 2. Wade Situation

Plaintiff has presented evidence that the allegations in Wade's written statement were false or misleading. Lead Tech Vivar testified that she did not tell Wade to re-transmit data to run more tests during her shift. Wade complained that Plaintiff made "midnight phone calls" to her, but it is undisputed that the calls were to Wade at the beginning of her shift at work – which began at midnight. Wade complained of "constant" emails. Plaintiff has presented evidence that the emails were work-related, respectful, and addressed issues raised by Wade.

Plaintiff has presented evidence that calls into question the adequacy of Quest's investigation. Plaintiff has presented evidence that when she attempted to explain her position to supervisors, they told her "they didn't want to hear it." Plaintiff has presented evidence that, when she attempted to explain her position, Hoffman called her "annoying." The investigation summary includes only Ms. Wade's allegations and none of Plaintiff's explanations. These alleged shortcomings in the investigation

suggests that the investigation and its result may have been one-sided and result-driven.

Plaintiff has presented evidence that raises a genuine issue of material fact regarding whether Defendant's assertions regarding her conduct during the Wade situation are false.  With reference to Quest's assertion that Plaintiff failed to review all control levels from Wade's October 7 and prior shifts, Plaintiff has presented evidence that she began the review by conducting a check of five randomly selected samples from each batch to determine whether they were valid notwithstanding Wade's error.  She began the review in this manner in an attempt to balance the costs of re-running each test, while still fully evaluating the effect of Wade's error.  Lead Tech Vivar agreed this was a valid procedure.  After this initial phase of review was completed, Plaintiff followed her supervisors' instructions to rerun all tests.

With reference to Quest's assertion that it decided to terminate Plaintiff's employment because she failed to follow Abadilla's instruction to remove Wade from the Integra machine, Plaintiff has presented evidence that she followed Abadilla's instructions and scheduled Wade to work on a different machine.  Plaintiff has presented evidence that Wade, without permission, traded machines with a co-worker and returned to work on the Integra machine despite being scheduled to work on a different machine as required by Abadilla.

Quest states that Plaintiff was discharged because she failed to retrain Wade on the Integra machine (and failed to ensure that Wade was retrained on the Integra machine). Plaintiff has presented evidence that Wade was already fully trained on the Integra machine. Plaintiff has presented evidence that she followed the procedure of having Wade recite the SOPs for the machine on which she was working – the ECI machine. Plaintiff has presented evidence that, shortly after Wade was removed from the Integra machine and before she could be fully "retrained," the Integra machine was removed from the department.

Quest relies heavily on its assertion that Plaintiff implemented an inappropriate discipline by having Wade recite the SOPs for two weeks. Plaintiff has presented evidence that her supervisors, Jehovics and Abadilla, suggested the discipline of having Wade recite the SOPs. Plaintiff expressed her disagreement with the proposed disciplinary procedure but, ultimately, followed her supervisors' instructions. When Wade complained about reciting the SOPs to a co-worker, Plaintiff requested and obtained HR approval to discontinue the recitation procedure.

Quest asserts that Plaintiff "misrepresented" to management that she had instructed Wade not to "re-transmit" data. Plaintiff has presented evidence that she instructed Wade to follow the SOPs carefully. It is undisputed that the SOPs do not allow for using the "re-transmit" button except in rare situations involving technical

difficulties. Plaintiff's evidence indicates that "following the SOPs" would include not using the "re-transmit" button and, as a result, there was no misrepresentation.

Quest claims that it terminated Plaintiff's employment because she discussed Wade's October 7 error with her on October 8 by telephone rather than in person. It is undisputed that Plaintiff worked the day shift and Wade's shift began at midnight. As a result, Plaintiff's evidence shows that the way to discuss the matter with Wade at the earliest time would be to telephone her at midnight – the beginning of her shift.

Quest asserts that Plaintiff failed to comply with Wade's request for cross-training. Plaintiff has presented evidence that Wade made a request for cross-training early in the summer of 2009. At that time, no cross-training was allowed because of staff shortages resulting from employees' vacation schedules. After the summer vacations ended, Plaintiff learned that some of the equipment would be removed from the department. As a result, Plaintiff waited to determine what equipment would remain in the department for purposes of Wade's cross-training. Wade made no objection at the time and made no requests for expedited cross-training.

Quest claims that it discharged Plaintiff because she failed to process Wade's request for full-time status. It is undisputed that Wade made only one request to become a full-time employee. Plaintiff has presented evidence that she asked Wade to submit in writing her availability for specific additional hours. Abadilla told

Plaintiff this was necessary in order to justify increasing Wade's hours from part-time to full-time. Certain tests on certain machines required that the testing be completed without interruption. As a result, it was necessary that Wade be available to work specific additional hours that would allow the completion of these tests during those additional hours. It is undisputed that Wade failed to provide that information, and Plaintiff has presented evidence that Abadilla instructed her not to submit the change form reclassifying Wade as a full-time employee without that information.

Quest asserts that Plaintiff "was unable and/or refused to recognize and acknowledge any wrong doing." *See* Motion for Summary Judgment, p. 16. As discussed above, Plaintiff has presented substantial evidence that Defendants' allegations against her are false and that she committed no "wrong doing." Consequently, a refusal to acknowledge misconduct would be neither surprising nor a basis for termination.

Plaintiff has presented evidence that, if proven at trial, would show that Quest's asserted reasons for terminating her employment were false and were, instead, a pretext for age discrimination. Plaintiff's evidence could prove by a preponderance of the evidence that but for her age, she would not have been discharged.

### 3. Statements Regarding Plaintiff's Age

Plaintiff has presented evidence that, immediately after she was discharged, Abadilla told Plaintiff that she would be ok financially because she was old enough to receive Social Security benefits. Plaintiff has presented evidence that Abadilla made other statements to her regarding her age, specifically that training Plaintiff was "not a priority" and that she and Abadilla were "old ladies" who were "slow to make decisions."

This evidence does not rise to the level of direct evidence of age discrimination. *See Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010). However, the statements are evidence that, combined with other evidence discussed above, raises a genuine issue of material fact regarding whether Defendants' proffered reasons for terminating Plaintiff's employment were a pretext for age discrimination. *See Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000).

### 4. "Same Actor" Defense

Quest argues that it is entitled to summary judgment based on the "same actor" defense. The "same actor" defense involves the situation where "the individual who allegedly discriminated against the plaintiff was the same individual who hired the plaintiff" and it "gives rise to an inference that discrimination was not the motive behind plaintiff's termination." *See id.* at 228 n.16. The "same actor" defense,

however, simply gives rise to an inference; it does not "rule out the possibility that an individual could prove a case of discrimination." *See id.*; *Alzuraqi v. Group 1 Automotive, Inc.*, 921 F. Supp. 2d 648, 662 (N.D. Tex. 2013).

In this case, it is unclear from the record whether the same group of individuals were responsible for hiring and firing Plaintiff. Quest has presented evidence that Plaintiff was hired "**with the approval of** Lab Director Lillian Rayford, Lab Manager Abadilla, and HR Recruiter Maria Oprea. *See* Affidavit of Judie Hoffman, Exh. 1 to Motion for Summary Judgment, ¶ 6 (emphasis added). Hoffman stated that the decision to terminate Plaintiff's employment was made by Hoffman, Jehovics, Abadilla, Rayford, and HR Manager Yvonne Martinez. *See id.*, ¶ 20. Because there were a number of individuals involved in the decision to terminate Plaintiff's employment, some of whom were not involved in the decision to hire her, the "same actor" inference is inapplicable. *See Black v. Pan Am. Labs., L.L.C.*, 646 F.3d 254, 260 n.4 (5th Cir. 2011).

To the extent Defendants base their "same actor" defense on the involvement of Abadilla in both the decision to hire and the decision to fire, the "same actor" inference is not appropriate where there are changed circumstances between the hiring decision and the firing decision. *See Tellepsen Pipeline Servs. Co. v. N.L.R.B.*, 320 F.3d 554, 569 (5th Cir. 2003); *Garza v. Ranier L.L.C.*, 2013 WL 3967786, *6 (W.D.

Tex. July 31, 2013). In this case, after Plaintiff was hired and before she was fired, Wade made an allegation of race discrimination. Abadilla (age 61 at the time Plaintiff was discharged) was herself implicated in the Wade situation. On December 2, 2009, after she acquiesced in the termination of Plaintiff's employment, Abadilla was issued a "Career Final Documented Discussion" and elected to resign. These changed circumstances, primarily Wade's allegation of race discrimination, render the "same actor" inference inapplicable.

## IV.   CONCLUSION AND ORDER

Plaintiff has presented evidence from which the trier of fact could conclude that her employment would not have been terminated but for her age. The presence of a genuine issue of material fact precludes summary judgment, and it is hereby

**ORDERED** that Defendants' Motion for Summary Judgment [Doc. # 17] is **DENIED**. The parties' Joint Pretrial Order remains due **October 23, 2013**, and the case remains scheduled for docket call on **November 4, 2013**.

SIGNED at Houston, Texas, this 30th day of **August, 2013.**

_____
Nancy F. Atlas
United States District Judge